## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**(1) UNITED STATES OF AMERICA,**

     *Plaintiff*,

**v.**

**(1) AMERICAN BANK OF**
 **OKLAHOMA,**

     *Defendant.*

**Civil No. 23-cv-00371-CDL**

**COMPLAINT AND**
**JURY DEMAND**

### INTRODUCTION

1.  The United States of America (the "United States") brings this action against American Bank of Oklahoma ("ABOK" or the "Bank") under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619 and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f to remedy discrimination in ABOK's residential mortgage lending.

2.  The FHA and ECOA prohibit creditors, such as banks, from discriminating in home loans and other credit services on the basis of race, color, national origin, and other characteristics.

3.  "Redlining" is one type of discrimination prohibited under the FHA and ECOA. Redlining occurs when lenders discourage loan applications, deny equal access to home loans and other credit services, or avoid providing home loans and other credit services to neighborhoods based on the race, color, or national origin of the residents of those neighborhoods.

4.  From 2017 through at least 2021 (the "Relevant Time Period"), ABOK engaged in a pattern or practice of unlawful redlining. As alleged in detail herein, ABOK avoided providing home loans[1] and other mortgage services in majority-Black and Hispanic neighborhoods in the Tulsa, Oklahoma Metropolitan Statistical Area ("Tulsa MSA").[2] The area that ABOK redlined includes the historically Black neighborhoods in Tulsa that were the site of the 1921 Tulsa Race Massacre.

5.  Throughout the Relevant Time Period, ABOK's redlining practices included locating and maintaining all of its branches and loan production offices in majority-white areas. In addition, the Bank relied on mortgage loan officers who worked in majority-white areas as the primary source for generating loan applications and conducting outreach. ABOK failed to conduct outreach, marketing, and advertising of mortgage services in majority-Black and Hispanic areas, including by failing to train or incentivize its lending or marketing staff to compensate for its lack of branches and lack of presence in majority-Black and Hispanic areas. The Bank also delineated a market area, or "assessment area," that excluded all majority-Black and Hispanic neighborhoods in the Tulsa MSA.

---

[1] For purposes of this Complaint, the terms "mortgage loans" or "home loans" refer to loans that ABOK and other creditors must report under the Home Mortgage Disclosure Act ("HMDA"), 12 U.S.C. §§ 2801–2810, and "mortgage lending" refers to providing those loans.

[2] A "majority-Black and Hispanic" census tract is a residential census tract where 50 percent or more of the residents are identified as either "Black or African American" or "Hispanic or Latino" by the United States Census Bureau. This Complaint uses "majority-Black and Hispanic census tract," "majority-Black and Hispanic area," and "majority-Black and Hispanic neighborhood" interchangeably and does the same for "majority-white tract," "majority-white area," and "majority-white neighborhood."

6. Further, in 2018, ABOK's regulator, the Federal Deposit Insurance Corporation ("FDIC"), informed ABOK that it had significant fair lending risk and recommended that ABOK take specific measures to address this risk, including tracking applications from majority-Black and majority-minority areas. ABOK did not take steps to address the fair lending risk identified by the FDIC and did not implement any of the FDIC's recommendations.

7. As a result of the above-described practices, ABOK generated disproportionately low numbers of home loan applications and made disproportionately low numbers of home loans during each year in the Relevant Time Period from majority-Black and Hispanic neighborhoods in Osage, Rogers, Tulsa, and Wagoner Counties, Oklahoma (the "Tulsa Lending Area"), as compared to similarly-situated lenders.

8. ABOK's conduct and practices were intended to deny, and had the effect of denying, equal access to home loans for those residing in, or seeking credit for properties located in, majority-Black and Hispanic neighborhoods, and otherwise discouraged those individuals from applying for home loans on the basis of the race, color, or national origin of the residents of those neighborhoods.

9. ABOK's conduct and practices reinforced and perpetuated segregated housing patterns because of race, color, or national origin. ABOK's conduct was not justified by a legitimate, nondiscriminatory reason or business necessity and was not necessary to achieve a substantial, legitimate, nondiscriminatory interest.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1345, 42 U.S.C. § 3614(a), and 15 U.S.C. § 1691e(h) because the action arises under the laws of the United States, and the United States brings this case as a plaintiff.

11. Venue is proper in the Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

12. Plaintiff the United States brings this action to enforce the FHA and ECOA. The FHA and ECOA authorize the Attorney General to bring a civil action in federal district court whenever he has reason to believe that an entity is engaged in a pattern or practice of resistance to the full enjoyment of rights secured by the FHA and ECOA. 42 U.S.C. § 3614(a); 15 U.S.C. § 1691e(h). The FHA further authorizes the Attorney General to bring suit where the defendant has denied rights to a group of persons and that denial raises an issue of general public importance. 42 U.S.C. § 3614(a).

13. Defendant American Bank of Oklahoma is a state-chartered bank headquartered in Collinsville, Oklahoma, and subject to the regulatory authority of the FDIC. ABOK is a subsidiary of Ameribank Holding Company, a privately-owned bank holding company headquartered in Collinsville, Oklahoma.

14. ABOK was founded in 1998 and has grown significantly since then in terms

of both asset size and mortgage lending volume. ABOK offers lending, depository, and related financial services throughout Oklahoma, with a primary focus in the northeastern portion of the state.

15. During the Relevant Time Period, ABOK operated eleven physical locations in Oklahoma. These locations included full-service bank branches and loan production offices. Five of these locations were in the Tulsa Lending Area.

16. As of September 30, 2022, ABOK's total assets equaled approximately $366 million.

17. ABOK is subject to the FHA, ECOA, and their respective implementing regulations, 24 C.F.R. pt. 100, and Regulation B.

18. ABOK is a "creditor" within the meaning of ECOA, 15 U.S.C. § 1691a(e), and engaged in "residential real estate-related transactions" under the FHA, 42 U.S.C. § 3605.

## FACTUAL ALLEGATIONS

### FDIC's Referral and the United States' Investigation

19. In January 2021, ABOK's prudential regulator, the FDIC, initiated a consumer compliance examination of ABOK. During the examination, the FDIC identified concerns regarding potential redlining.

20. After completing its examination and statistical analyses, the FDIC concluded it had reason to believe that ABOK violated ECOA, 15 U.S.C. § 1691 *et seq.*, and Regulation B, 12 C.F.R. Part 1002, as well as the FHA, 42 U.S.C. § 3605, and its

implementing regulations, 24 C.F.R. Part 100, by engaging in a pattern or practice of illegal credit discrimination on the prohibited basis of race by redlining in Osage, Rogers, Tulsa, and Wagoner counties, Oklahoma.

21. By correspondence dated January 11, 2022, the FDIC referred this matter to the United States Department of Justice.

22. On March 9, 2022, the United States informed ABOK that it was opening an investigation into whether the Bank had engaged in unlawful redlining in violation of ECOA, 15 U.S.C. §§ 1691–1691f, and the FHA, 42 U.S.C. §§ 3601–3619.

### The Tulsa Lending Area

23. The Tulsa MSA includes seven counties in Oklahoma: Creek, Okmulgee, Osage, Pawnee, Rogers, Tulsa, and Wagoner.

24. During the Relevant Time Period, the vast majority of ABOK's residential mortgage lending in the Tulsa MSA occurred in Osage, Rogers, Tulsa, and Wagoner counties ("the Tulsa Lending Area").

25. The Tulsa Lending Area had approximately 900,000 residents during the Relevant Time Period. Sixty-four percent of the residents of the area are non-Hispanic white ("white"), 11 percent are Hispanic or Latino ("Hispanic"), and 8.5 percent are non-Hispanic Black ("Black").

26. The Tulsa Lending Area comprises 236 census tracts, of which 183 (77.5 percent) are majority-white, and 26 (11 percent) are majority-Black and Hispanic. Of the 26 majority-Black and Hispanic census tracts, one is in Osage County and the

remaining 25 are in Tulsa County. All 26 majority-Black and Hispanic census tracts are concentrated in the northern part of the Tulsa metropolitan area.

**ABOK's Assessment Area**

27. As a depository bank, ABOK is subject to the requirements of the Community Reinvestment Act ("CRA"), 12 U.S.C. §§ 2901–2908, and its enabling regulations, which require covered banks to meet the credit needs of the communities that they serve. Each bank subject to the CRA self-identifies the communities that it serves in the bank's "assessment area(s)." Federal regulators look at a bank's self-identified assessment area(s) in evaluating whether an institution is meeting the credit needs of its entire community.

28. Under the CRA, a bank's assessment area must generally consist of one or more metropolitan areas or one or more whole, contiguous counties. 12 C.F.R. § 345.41(c)–(e).

29. Beginning in 2014 or earlier, until the first quarter of 2021, ABOK delineated its assessment area in the Tulsa MSA to exclude all of the majority-Black and Hispanic census tracts in the MSA. The assessment area did not encompass whole counties. The southern border of the assessment area ran along demographic lines and excluded the historically Black area of North Tulsa, while including majority-white tracts further north in Tulsa County. ABOK also excluded the only majority-

Black and Hispanic census tract in Osage County. *See* **Exhibit A**.[3] The majority-Black and Hispanic areas that ABOK excluded from its assessment area contain the neighborhoods destroyed during the 1921 Tulsa Race Massacre.

30. ABOK changed its assessment area after the FDIC's 2021 consumer compliance examination. The new assessment area includes the entirety of Osage, Rogers, Tulsa, and Wagoner counties, the counties that make up the Tulsa Lending Area.

31. The United States' claims are limited to the Tulsa Lending Area.

### All of ABOK's Branches and Loan Production Offices Are Located in Majority-White Neighborhoods

32. During the Relevant Time Period, ABOK operated two full-service branches and three loan production offices in the Tulsa Lending area. All are located in majority-white census tracts. The locations of the branches and loan production offices are shown on Exhibit A.

33. Two loan production offices were opened after the FDIC warned ABOK of its fair lending risk, and yet ABOK selected locations in majority-white areas. One of the new locations is in the City of Tulsa, where there is a concentration of Black and Hispanic census tracts, but ABOK selected a location for its loan production office in

---

[3] Exhibit A depicts ABOK's assessment area for the period of at least 2014 through the first quarter of 2021; the demographic information shown on the map is from the U.S. Census Bureau's 2015 American Community Survey data, because that data is close in time to ABOK's delineation of its assessment area.

a majority-white census tract.

34. Since its founding and continuing through the Relevant Time Period, ABOK has not located a single branch or loan production office in a majority-Black and Hispanic census tract. Although there has been some demographic shift in the Tulsa MSA during the Relevant Time Period, ABOK's branches and loan production offices are in census tracts that were majority-white during the entire period.

35. In the majority-white neighborhoods where ABOK operated branches or loan production offices, residential mortgage lending services were available to walk-in customers. Because there were no ABOK locations in majority-Black and Hispanic neighborhoods, these services were not as easily available to the residents of such neighborhoods, as those residents had to travel to majority-white neighborhoods where ABOK branches or loan production offices were located.

36. ABOK knew its branches and loan production offices were not serving the credit needs of majority-Black and Hispanic areas but did not take meaningful steps to address this failure.

37. By concentrating all of its branches and loan production offices in majority-white neighborhoods, ABOK discriminated against and discouraged residents of, or those seeking credit for properties located in, majority-Black and Hispanic neighborhoods from applying for and obtaining home loans from ABOK and restricted their access to the Bank's credit and mortgage lending services.

**ABOK's Loan Officers, Outreach and
Advertising Were Focused in Majority-White Neighborhoods**

38. During the Relevant Time Period, ABOK's mortgage loan officers served the credit needs of majority-white neighborhoods, but did not serve the credit needs of majority-Black and Hispanic neighborhoods.

39. ABOK relied primarily on its mortgage loan officers to generate residential mortgage loan applications and cultivate relationships to serve the credit needs of residents in the Tulsa Lending Area.

40. During the Relevant Time Period, the Bank assigned all of its loan officers to its branch locations or loan production offices, which were—and continue to be—all located in majority-white areas; it did not assign a single loan officer to conduct outreach in majority-Black and Hispanic areas and did not market, advertise, or take steps to generate loans from majority-Black and Hispanic neighborhoods.

41. During the Relevant Time Period, ABOK relied almost entirely on mortgage loan officers—all of whom were assigned offices in branches and loan production offices in majority-white neighborhoods—to develop referral sources, conduct outreach to potential customers, and distribute marketing materials related to the Bank's residential mortgage lending services.

42. ABOK paid for advertisements to increase brand recognition in the local majority-white communities where its branches and loan production offices were located, including weekly advertisements in local publications and billboards. ABOK

10

did not advertise in any publications that were intended for circulation within majority-Black and Hispanic areas.

43. During the Relevant Time Period, all of ABOK's billboards were located in majority-white areas of the Tulsa Lending Area.

44. During the Relevant Time Period, when ABOK's advertisements featured images of people, the images were of white-appearing loan officers and Bank employees. Images on ABOK's website were also of white-appearing individuals.

45. Despite operating in the Tulsa Lending Area, where 11% percent of the population is Hispanic, ABOK did not circulate any marketing materials or advertisements in Spanish. ABOK's website had no content in Spanish and did not identify language abilities of any employees or direct potential customers to anyone who can speak Spanish.

46. During the Relevant Time Period, ABOK did not employ or hire loan officers with ties or relationships to majority-Black and Hispanic areas or with the requisite Spanish language skills necessary to provide credit services to residents in some of these areas.

47. To generate brand recognition, ABOK paid almost $270,000 during the Relevant Time Period for sponsorships in community events and school sporting events in the local communities where its branches were located.

48. During the Relevant Time Period, ABOK did not sponsor any community events or school sporting events in majority-Black and Hispanic areas. Instead, the

only community engagement ABOK had within majority-Black and Hispanic areas was the sponsorship of a modest financial literacy program throughout the region that began in 2021 and provided financial literacy curriculum to students at a small number of schools.

49. During the Relevant Time Period, ABOK took no actions to train or incentivize its loan officers to compensate for its lack of branches and loan production offices or to serve residents of majority-Black and Hispanic neighborhoods. The Bank also took no meaningful steps to generate mortgage applications from majority-Black and Hispanic areas in the Tulsa Lending Area.

50. It was not until late 2021 that ABOK began to direct some marketing efforts to majority-Black and Hispanic neighborhoods in the Tulsa Lending Area.

51. ABOK's failure to assign any loan officers to majority-Black and Hispanic areas, and failure to take any meaningful efforts to compensate for its lack of branches and loan officers in majority-Black and Hispanic neighborhoods, was intended to deny, and had the effect of denying, equal access to home loans for those residing in, or seeking credit for properties located in, majority-Black and Hispanic neighborhoods in the Tulsa Lending Area.

### ABOK Failed to Implement Effective Fair Lending Compliance Management Systems

52. During the Relevant Time Period, ABOK's internal fair lending policies and procedures were inadequate to ensure that the Bank was positioned to provide

equal access to credit to majority-Black and Hispanic neighborhoods in the Tulsa Lending Area.

53. ABOK did not engage in any fair lending assessments to identify redlining risk and did not have regular or systematic assessments regarding compliance with the FHA or ECOA.

54. ABOK had no written policies, procedures, or guidelines to ensure compliance with fair lending laws.

55. The Bank's Compliance Committee was responsible for monitoring compliance with fair lending laws, but rarely discussed fair lending compliance.

56. In 2018, the FDIC informed ABOK that it had potential fair lending risk based on, among other things, its low volume of lending in majority-Black areas and lack of monitoring of mortgage lending from majority-minority areas. The FDIC provided written recommendations to ABOK for managing this risk, including a recommendation to monitor lending in majority-Black tracts and majority-minority tracts, but ABOK took no action to address this risk and did not implement any of the recommendations.

**ABOK had Disproportionately Low Numbers of Home Loan Applications
from Majority-Black and Hispanic Neighborhoods in the Tulsa Lending Area**

57. ABOK's lending demonstrated a pattern of disproportionately failing to serve majority-Black and Hispanic neighborhoods in the Tulsa Lending Area, when

compared with its peer lenders.

58. ABOK's policies and practices alleged herein—including the concentration of all of its branches and loan production offices, loan officers, marketing, and outreach in majority-white neighborhoods—have discriminated against, had the effect of discriminating, and discouraged applicants and prospective applicants in majority-Black and Hispanic neighborhoods in the Tulsa Lending Area from applying for home loans and other mortgage-related services.

59. ABOK's own data on home loan applications and originations, which it is required to report to regulators under HMDA, confirms that ABOK avoided serving majority-Black and Hispanic neighborhoods. *See* **Exhibit B**.[4]

60. From 2017 through 2021, ABOK significantly underperformed its "peer lenders" in generating home loan applications from majority-Black and Hispanic areas in the Tulsa Lending Area. "Peer lenders" are similarly-situated financial institutions that received between 50 percent and 200 percent of the Bank's annual volume of home loan applications.

61. The disparity between the rate of applications generated by ABOK and the rate generated by its peer lenders from majority-Black and Hispanic areas is both statistically significant—meaning unlikely to be caused by chance—and sizable

---

[4] Exhibit B depicts ABOK's applications from majority-Black and Hispanic tracts in the Tulsa Lending Area from 2017 through 2021; the demographic information shown on the map is from the U.S. Census Bureau's 2019 American Community Survey data because that data is close in time to the Relevant Time Period.

across the five-year Relevant Time Period.

62. Specifically, of the 1,736 HMDA-reportable mortgage applications ABOK generated from 2017 through 2021 in the Tulsa Lending Area, only 14, or 0.8 percent, came from individuals seeking credit for properties located in majority-Black and Hispanic census tracts. In 2017 and 2018, ABOK received zero applications from individuals seeking credit for properties located in majority-Black and Hispanic census tracts. By contrast, during the Relevant Time Period, ABOK's peers generated 4.2 percent of their HMDA applications from individuals seeking credit for properties located in these same majority-Black and Hispanic census tracts. These disparities are statistically significant in every year across the five-year Relevant Time Period.

63. In other words, from 2017 through 2021, ABOK's peers generated applications from individuals seeking credit for properties located in majority-Black and Hispanic census tracts at over five times the rate of ABOK.

64. The statistically significant disparities between applications ABOK generated from majority-Black and Hispanic neighborhoods and those that its peers generated show that there were applicants seeking home loans for properties in majority-Black and Hispanic areas in the Tulsa Lending Area. ABOK had no legitimate, non-discriminatory reason to draw so few applications from these areas.

65. The data show a statistically significant failure by ABOK, relative to its peer lenders, to draw applications for home loans and provide residential mortgage

services to residents of, and those seeking credit for properties located in, majority-Black and Hispanic census tracts in the Tulsa Lending Area on a non-discriminatory basis from 2017 through 2021.

66. The few applications ABOK generated from majority-Black and Hispanic census tracts were mostly from white applicants. From 2017 through 2021, of the fourteen applications ABOK generated from majority-Black and Hispanic areas in the Tulsa Lending Area, only one application came from a Black or Hispanic applicant.

**ABOK had Disproportionately Low Number of Home Loans Made in Majority-Black and Hispanic Neighborhoods of the Tulsa Lending Area**

67. ABOK's lending practices have discriminated against and discouraged applicants in majority-Black and Hispanic neighborhoods from seeking home loans. As a result, ABOK made a smaller percentage of HMDA-reportable residential mortgage loans in these neighborhoods compared to its peers from 2017 through 2021. *See* **Exhibit C**.

68. Specifically, of the 1,527 HMDA-reportable residential mortgage loans ABOK made in the Tulsa Lending Area from 2017 through 2021, only 9 loans, or less than 0.6 percent, were made to residents of majority-Black and Hispanic census tracts. By contrast, ABOK's peers made 3.6 percent of their HMDA loans to residents of these same majority-Black and Hispanic census tracts. These disparities are statistically

16

significant in every year across the five-year Relevant Time Period.

69. In other words, from 2017 through 2021, ABOK's peer lenders made home loans in majority-Black and Hispanic areas at more than six times the rate of ABOK.

70. The level of lending by ABOK's peers demonstrates that there were qualified borrowers and demand for mortgage loans in majority-Black and Hispanic neighborhoods in the Tulsa Lending Area. ABOK had no legitimate, non-discriminatory reason to make so few home loans from these areas.

71. The data show a statistically significant failure by ABOK to make home loans and provide residential mortgage services to qualified applicants in majority-Black and Hispanic census tracts in the Tulsa Lending Area on a non-discriminatory basis when compared with similarly-situated lenders from 2017 through 2021.

72. The very few loans that ABOK made in majority-Black and Hispanic census tracts were made mostly to white borrowers. From 2017 through 2021, of the nine home loans ABOK made in majority-Black and Hispanic areas in the Tulsa Lending Area, only one loan was made to a Black or Hispanic borrower.

73. ABOK's discriminatory practices as described herein were intended to discriminate and have had the effect of discriminating on the basis of race, color, and national origin.

### Racist or Discriminatory Emails Exchanged by ABOK's Lending Staff

74. During the Relevant Time Period, and before, ABOK loan officers and executives sent and received emails via their ABOK email accounts containing racial

slurs and racist content.

75.  In several instances, loan officers, managers, and executives exchanged emails that indicated racial and national origin animus. For example:

a.  An ABOK executive forwarded an email to a group that included an ABOK Branch Manager entitled, "Proud to be White!" The email included racial slurs, including the "N word,"[5] and asserted that "ghettos" are "the most dangerous places to live."

b.  An ABOK mortgage loan officer referred to a moderate-income area within the Bank's market area as the edge of the "ghetto."

c.  ABOK employees, including executives, shared an email on multiple occasions that attributed the alleged deterioration of Detroit to "minorities," African Americans, and "legal and illegal immigrants." After suggesting the city became more diverse, the email asserted that crimes became more violent, high school "flunk-out rates" went up, and that few people could speak English. The email also stated "Multiculturalism: what a perfect method to kill our language, culture, country and way of life," and "IF YOU THINK MEXICANS AND MUSLIMS AND OTHER FORIEGNERS [sp] WILL EVENTUALLY FIT RIGHT IN THEN YOU ARE AS BIG A PART OF THE

---

[5] The circulated email included this racial slur in its entirety.

PROBLEM AS THEY ARE."

d.  An ABOK manager forwarded an email to an ABOK executive that associated Black culture with inner-city gang violence and economic hardships, attributed violent crime to Black people, and suggested that if Black people left America, the country's poverty rate, prison population, number of welfare recipients, and number of gang members would all decrease while average SAT scores and average income would increase.

76.   On other occasions, ABOK employees, including executives, circulated emails among Bank employees that suggested to live in the United States a person must speak English. For instance:

e.  An ABOK executive forwarded an email to a loan officer about supporting America, which stated immigrants are welcome if, among other things they "get a place to lay [their] head," get a job, "live By OUR Rules!," "Pay YOUR Taxes!," and "Learn the LANGUAGE like immigrants Have in the past!!!"

## COUNT I – VIOLATIONS OF THE FAIR HOUSING ACT

77.   The United States incorporates all prior Paragraphs of the Complaint as if fully set forth herein.

78.   ABOK's policies and practices constitute the unlawful redlining of majority-Black and Hispanic communities in the Tulsa Lending Area on account of the race, color, and national origin of residents in those communities. ABOK's policies and

practices were intended to deny, and had the effect of denying, equal access to home loans to residents of majority-Black and Hispanic communities and those seeking credit for properties located in those communities. The Bank's conduct was not justified by a business necessity or legitimate business considerations.

79. ABOK's actions as alleged herein constitute:

a. Discrimination on the basis of race, color, and national origin in making available residential real estate-related transactions, or in the terms or conditions of residential real estate-related transactions, in violation of the Fair Housing Act, 42 U.S.C. § 3605(a), and its implementing regulation, 24 C.F.R. §§ 100.110(b), 100.120;

b. The making unavailable or denial of dwellings to persons because of race, color, and national origin, in violation of the Fair Housing Act, 42 U.S.C. § 3604(a), and its implementing regulation, 24 C.F.R. § 100.50(b)(3);

c. Discrimination on the basis of race, color, and national origin in the terms, conditions, or privileges of the sale or rental of dwellings, or the provision of services or facilities in connection with the sale or rental of dwellings, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b), and its implementing regulation, 24 C.F.R. §§ 100.50(b)(2), 100.65.

80. ABOK's policies and practices as alleged herein constitute:

a. A pattern or practice of resistance to the full enjoyment of rights secured by the FHA; and

    b.  A denial of rights granted by the FHA to a group of persons that raises an issue of general importance.

81.   ABOK's pattern or practice of discrimination was intentional and willful and was implemented with reckless disregard for the rights of individuals based on their race, color, and national origin.

82.   Persons who have been victims of ABOK's discriminatory policies and practices are "aggrieved" as defined in 42 U.S.C. § 3602(i), and may have suffered damages as a result of the Bank's conduct in violation of the Fair Housing Act, as described above.

### COUNT II –VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT

83.   The United States incorporates all prior paragraphs of the Complaint as if fully set forth herein.

84.   ABOK's policies and practices as alleged herein constitute unlawful discrimination against applicants and prospective applicants, including by redlining majority-Black and Hispanic communities in the Tulsa Lending Area and engaging in acts and practices directed at prospective applicants that would discourage applicants from applying for credit on the basis of race, color, and national origin in violation of the Equal Credit Opportunity Act and Regulation B. 15 U.S.C. § 1691 *et seq*; 12 C.F.R. § 1002.4(a)–(b).

85.   ABOK's policies and practices as alleged herein constitute a pattern or practice of discrimination and discouragement and resistance to the full enjoyment

of rights secured by the Equal Credit Opportunity Act, in violation of the Act. 15 U.S.C. § 1691(a); 15 U.S.C. § 1691e(g)–(h).

86.    ABOK's pattern or practice of discrimination was intentional and willful and was implemented with reckless disregard for the rights of individuals based on their race, color, and national origin.

87.    Persons who have been victims of ABOK's discriminatory policies and practices are "aggrieved," as defined in 15 U.S.C. § 1691e(i), and may have suffered damages as a result of the Bank's conduct in violation of the Equal Credit Opportunity Act, as described above.

**REQUEST FOR RELIEF**

WHEREFORE, the United States prays that the Court enter an order that:

(1) Declares that the conduct of Defendant American Bank of Oklahoma violates the Fair Housing Act;

(2) Declares that the conduct of Defendant American Bank of Oklahoma violates the Equal Credit Opportunity Act;

(3) Enjoins Defendant, its agents, employees, and successors in interest, and all other persons in active concert or participation with Defendant, from:

    A.  Discriminating on account of race, color, or national origin in any aspect of their lending business practices;

    B.  Discouraging applicants on account of race, color, or national origin;

    C.  Failing or refusing to take such affirmative steps as may be necessary

to restore, as nearly as practicable, the victims of Defendant's unlawful practices to the position they would be in but for the discriminatory conduct;

D.  Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of Defendant's unlawful practices, and providing policies and procedures to ensure all segments of the Tulsa Lending Area are served without regard to prohibited characteristics;

(4) Awards monetary damages against Defendant in accordance with 42 U.S.C. § 3614(d)(1)(B) and 15 U.S.C. § 1691e(h);

(5) Assesses a civil penalty against Defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C), in order to vindicate the public interest; and

(6) Awards the United States any additional relief the interests of justice may require.

## DEMAND FOR JURY TRIAL

The United States demands trial by jury in this action on all issues so triable.

Respectfully submitted this 28th day of August, 2023.

**FOR THE UNITED STATES OF AMERICA:**

|  |  |
|---|---|
|  | MERRICK B. GARLAND<br>Attorney General |
| CLINTON J. JOHNSON<br>United States Attorney | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
|  | CARRIE PAGNUCCO<br>Chief |
|  | LUCY G. CARLSON<br>Deputy Chief |

|  |  |
|---|---|
| */s/ Marianne Hardcastle* | */s/ Jennifer Slagle Peck* |
| MARIANNE HARDCASTLE | JENNIFER A. SLAGLE PECK |
| marianne.hardcastle@usdoj.gov | jennifer.slagle.peck@usdoj.gov |
| OBA #15054 | District of Columbia Bar #990596 |
| KRISTIN HARRINGTON | SARA L. NILES |
| kristin.harrington@usdoj.gov | sara.niles@usdoj.gov |
| OBA #21185 | Massachusetts Bar #634257 |
| Assistant U.S. Attorneys | Trial Attorneys |
| Civil Division | Housing and Civil Enforcement Section |
| U.S. Attorney's Office | Civil Rights Division |
| 110 W. 7th Street, Suite 300 | U.S. Department of Justice |
| Tulsa, OK 74119 | 950 Pennsylvania Ave. NW – 4CON |
| (918) 382-2700 | Washington, DC 20530 |
|  | (202) 514-4713 |

24