UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 23-cv-371-CDL |
| v. | ) |
| | ) |
| AMERICAN BANK OF OKLAHOMA, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

**I.   Background**

The defendant, American Bank of Oklahoma (ABOK), moves to strike from paragraphs 4 and 29 of the plaintiff's Complaint (Doc. 2) references to the 1921 Tulsa Race Massacre. In the Complaint, the plaintiff, United States of America, alleges that the bank engaged in redlining in all majority-Black and Hispanic census tracts in four counties within the Tulsa, Oklahoma Metropolitan Statistical Area. (*See id.*). The portions of paragraphs 4 and 29 that are the subject of the motion are emphasized in context below:

> 4.   From 2017 through at least 2021 (the "Relevant Time Period"), ABOK engaged in a pattern or practice of unlawful redlining. As alleged in detail herein, ABOK avoided providing home loans and other mortgage services in majority-Black and Hispanic neighborhoods in the Tulsa, Oklahoma Metropolitan Statistical Area ("Tulsa MSA"). **The area that ABOK redlined includes the historically Black neighborhoods in Tulsa that were the site of the 1921 Tulsa Race Massacre**.
> . . .
>
> 29.   Beginning in 2014 or earlier, until the first quarter of 2021, ABOK delineated its assessment area in the Tulsa MSA to exclude all of the majority-Black and Hispanic census tracts in the MSA. The

> assessment area did not encompass whole counties. The southern border of the assessment area ran along demographic lines and excluded the historically Black area of North Tulsa, while include majority-white tracts further north in Tulsa County. ABOK also excluded the only majority-Black and Hispanic census tract in Osage County. **The majority-Black and Hispanic area that ABOK excluded from its assessment area contain the neighborhoods destroyed during the 1921 Tulsa Race Massacre.**

(Doc. 2 at 2, 7-8) (citation omitted) (emphasis added).

On the same date that this action was filed, the parties filed a Joint Motion for Approval and Entry of Proposed Consent Order (Doc. 11). In that Joint Motion, the parties recite that they have resolved the claims and seek entry of a proposed Consent Order, which they represent to be in the public interest. The stated goal of the parties in entering into the agreed Consent Order "is to increase access to credit in majority-Black and Hispanic neighborhoods in Osage, Rogers, Tulsa and Wagoner counties within the Tulsa MSA . . . and that the full implementation of the [Consent Order] terms will provide a resolution to the claims asserted in the Complaint in a manner consistent with ABOK's legitimate business interests." (Doc. 11-1 at 1-2).

## II.   Standards

On motion made by a party before responding to a pleading, "[t]he court may strike from [the] pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(2). Such motions are generally disfavored. *See Hayes v. Owen*, 22-cv-0230-CVE-SH, 2023 WL 3005011, *1 (N.D. Okla. Apr. 19, 2023) (citing *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1057 (5th Cir. 1982) and 5C Charles Alan

Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1380). However, courts have broad discretion in determining motions under Rule 12(f), and such motions are properly granted where it is established that the challenged allegations are irrelevant to the subject matter of the lawsuit and there is a possibility of harm to a party or the allegations confuse the issues. *See* Fed. Prac. & Proc. § 1382.

"'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material." *Id.* "[S]uperfluous historical allegations" may properly be stricken, "although allegations of this type may be permitted in a pleading if they are relevant to the claim for relief or provide useful background for the parties and the court in the absence of any prejudice." *Id.* "'[I]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. . . . One test that has been advanced for determining whether an allegation in a pleading is immaterial and impertinent within the meaning of Rule 12(f) is whether proof concerning it could be received at trial; if it could not, then the matter is immaterial and impertinent." *Id.*

"'[S]candalous' matter is that which improperly casts a derogatory light on someone, most typically on a party to the action. It is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." *Id.* In the case of scandalous matter, "the disfavored character of Rule 12(f) is relaxed somewhat." *Id.*

3

**III.   Discussion**

Upon review of the Complaint (Doc. 2), proposed Consent Order (Doc. 11-1), motion and briefing (Doc. 21, 22, 28, 29) and consideration of the specific challenged portions of the Complaint in light of the law applicable to Rule 12(f) motions, the Court determines that the defendant's Motion to Strike (Doc. 21) should be granted, and references to the Tulsa Race Massacre in paragraphs 4 and 29 of the Complaint should be stricken. Those allegations regarding the Tulsa Race Massacre are impertinent, immaterial, and scandalous for the following reasons:

1.   The Tulsa Race Massacre occurred in 1921. That horrific incident involved mob violence against and killing of many of Tulsa's Black citizens, the burning of more than one thousand homes, and destruction of what was known as America's Black Wall Street, a thriving area of commerce on the northeast of downtown Tulsa.

2.   According to the allegations of the Complaint, ABOK was founded in 1998 (Doc. 2 at 4), 77 years after the Tulsa Race Massacre. Obviously, ABOK had no involvement in or relationship to the events that occurred almost eight decades prior to its founding.

3.   The gravamen of the plaintiff's claim in this case is its allegation that, from 2017 through 2021, ABOK improperly "redlined" – that is, did not provide equal lending and credit services – in "majority-Black and Hispanic neighborhoods in the Tulsa [MSA]." (*Id.* at 2). The Tulsa MSA is an expansive area covering a large portion of northeast Oklahoma (*see* Doc. 22 at 8), and the particular focus of this lawsuit is ABOK's lending /

4

credit practices in Osage, Rogers, Tulsa, and Wagoner counties within the Tulsa MSA (Doc. 11-1), whereas the historic area destroyed in 1921 comprises a small portion of the Tulsa MSA and of Tulsa County within the MSA (*see* Doc. 22 at 9-10). The site of the 1921 Tulsa Race Massacre, within a small area of one county, is immaterial to ABOK's lending practices across parts of a large four-county geographic area approximately 100 years later.

4. The allegations regarding the Tulsa Race Massacre, while historically and technically accurate, are clearly not essential or important to the determination of the plaintiff's specific claims involving lending practices a century later. The plaintiff does not request in the Complaint any distinct, specific form of relief for the area impacted by the Tulsa Race Massacre (*See* Doc. 2 at 22-24). The allegations are also not pertinent or necessary to the parties' resolution of the claims, as they are not repeated or mentioned in the proposed Consent Order (*see* Doc. 11-1).

5. It does not appear that proof regarding the challenged allegations would be received at trial, as such proof is unnecessary and irrelevant to any claim or defense, and even were there found to be any probative value of such evidence to plaintiff's claims, it would in any event be substantially outweighed by danger of unfair prejudice and confusion of the issues. *See* Fed. R. Evid. 402, 403. As a result, such allegations are "immaterial and impertinent." Fed. Prac. & Proc. § 1382.

6. The particular references to the Tulsa Race Massacre are also scandalous as applied to ABOK in that they "improperly cast[] a derogatory light" on ABOK, which has no relation whatsoever to the horrible Race Massacre events in 1921. *Id.*

7. ABOK has sufficiently shown potential ongoing prejudice resulting from the plaintiff's injection of the challenged allegations into paragraphs 4 and 29 of the Complaint. ABOK recites numerous press reports, following the filing of the Complaint, in which the Tulsa Race Massacre is mentioned in connection with the claims in this suit against ABOK. (*See* Doc. 21 at 6-9). In addition, ABOK notes that the derogatory light cast upon it by the challenged allegations and the press reporting may make it significantly more difficult for ABOK to increase its lending in the relevant area in accordance with the parties' proposed resolution via their proposed Consent Order.

## IV.   Conclusion

For the foregoing reasons, the defendant's Motion to Strike (Doc. 21) is **granted**. The challenged allegations (the last sentence of each of paragraphs 4 and 29) are hereby **deemed stricken** from the Complaint.

IT IS SO ORDERED this 2nd day of October, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge