**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Civil No. 23-cv-00371-CDL** |
| *Plaintiff,* | |
| v. | |
| **AMERICAN BANK OF OKLAHOMA,** | |
| *Defendant.* | |

**CONSENT ORDER**

## I.   INTRODUCTION

The Parties jointly submit this Consent Order for approval and entry by the Court. The Order resolves all allegations of the United States of America ("United States") in the simultaneously filed Complaint, asserting that American Bank of Oklahoma ("ABOK" or "the Bank") engaged in a pattern or practice of unlawful redlining in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–16911f, Regulation B, 12 C.F.R. § 1002.1 *et seq.* Specifically, the United States alleges that ABOK engaged in redlining by avoiding providing home loans and other mortgage services, and engaged in discriminatory conduct that would discourage mortgage applications from prospective applicants who are residents of or seeking credit in majority-Black and Hispanic census tracts in the Tulsa, Oklahoma Metropolitan Statistical Area ("the Tulsa MSA").

The Court has jurisdiction over the Parties and subject matter of this action. There have been no factual findings or adjudication in this case. The Parties enter into this Consent Order to voluntarily resolve all claims arising from the conduct alleged in the

Complaint. Entry of this Consent Order is in the public interest. The Parties agree that the goal of this Consent Order is to increase access to credit in majority-Black and Hispanic neighborhoods in Osage, Rogers, Tulsa and Wagoner counties within the Tulsa MSA ("the Tulsa Lending Area") and that the full implementation of the terms in this Consent Order will provide a resolution to the claims asserted in the Complaint in a manner consistent with ABOK's legitimate business interests. The Bank neither admits nor denies any of the allegations in the Complaint except that, for the purposes of this Consent Order, the Bank admits facts necessary to establish this Court's jurisdiction over it and over the subject matter of this action.

## II.    BACKGROUND

ABOK is a state-chartered bank headquartered in Collinsville, Oklahoma and subject to the regulatory authority of the Federal Deposit Insurance Corporation ("FDIC"). ABOK is a subsidiary of Ameribank Holding Company, a privately-owned bank holding company headquartered in Collinsville, Oklahoma. ABOK was founded in 1998 and has grown significantly since then in terms of both asset size and mortgage lending volume. ABOK offers lending, depository, and related financial services throughout Oklahoma, with a primary focus in the northeastern portion of the state.

In January 2021, ABOK's prudential regulator, the FDIC, initiated a consumer compliance examination of ABOK. During the examination, the FDIC identified concerns regarding potential redlining. By correspondence dated January 11, 2022, the FDIC referred this matter to the United States Department of Justice. On March 9, 2022, the

United States informed ABOK that it was opening an investigation into whether the Bank had engaged in unlawful redlining in violation of the FHA and ECOA.

After conducting its investigation and reviewing the information provided by the Bank, the United States contends that, from 2017 through at least 2021, ABOK avoided serving the credit needs of borrowers in majority-Black and Hispanic census tracts in the Tulsa Lending Area and discouraged borrowers in majority-Black and Hispanic census tracts in the Tulsa Lending Area from obtaining mortgage loans.

## III.  TERMS OF THE ORDER

### A.  Lending Practices

1.     ABOK, including its officers, agents, servants, and employees who have actual notice of this Consent Order, is hereby enjoined from engaging in any act or practice that constitutes redlining in violation of the FHA, ECOA, or Regulation B. The term "officers, agents, servants, and employees" shall comport with the interpretation of these terms under Fed. R. Civ. P. 65(d)(2)(B). Nothing in this Order will be read as an exception to this paragraph.

2.     For purposes of this Consent Order, ABOK's "Tulsa Lending Area" is comprised of Osage, Rogers, Tulsa and Wagoner counties within the Tulsa MSA.

3.     For purposes of this Consent Order, a "majority-Black and Hispanic" census tract is one where fifty percent or more of the residents are identified as either "Black or African American" or "Hispanic or Latino" by the United States Census Bureau using data gathered during the 2020 Census. A "majority-white" census tract is one where more than

3

fifty percent of the residents are identified as "non-Hispanic white" by the United States Census Bureau.

**B.     Fair Lending Compliance**

4.      The date this Consent Order is entered by the Court is the "Effective Date." Within thirty days of the Effective Date, ABOK will submit the qualifications of a qualified third-party consultant to the United States for non-objection[1] who will conduct a detailed assessment of the Bank's fair lending program in the Tulsa Lending Area, specifically as it relates to the Bank's fair lending obligations and lending in majority-Black and Hispanic census tracts, and who will produce a written report ("Fair Lending Status Report and Compliance Plan"). Within thirty days of receiving non-objection from the United States regarding the identity and qualifications of the third-party consultant, ABOK must submit to the United States, for non-objection, a statement of work from the independent third-party consultant describing their methodology for the fair lending assessment.

5.      The Fair Lending Status Report and Compliance Plan must include a review of the Bank's existing fair lending policies and practices and an analysis of the Bank's policies and practices related to: the location of branches and loan production offices; loan officers'

---

[1] "Non-objection" means written notification to ABOK that there is no objection to a proposal by ABOK for a course of action. Non-objections will be provided as soon as practicable and will not be unreasonably withheld. Failure by the United States to submit such written notification, proposed revisions, or written meet-and-confer request within sixty days of a submission by ABOK will be deemed a non-objection.

solicitation of applications,[2] training, oversight, and compensation; marketing; and fair lending compliance monitoring.

6.      Within sixty days of receiving non-objection from the United States regarding the statement of work, ABOK will submit the Fair Lending Status Report and Compliance Plan described in Paragraphs 4–5 to the United States. The Fair Lending Status Report and Compliance Plan is subject to non-objection by the United States. The Fair Lending Status Report and Compliance Plan will specifically include the status of progress relating to, at least:

> a.  The steps ABOK has taken to revise the Bank's mortgage lending policies and practices that pose redlining risks in the Tulsa Lending Area, including at a minimum, risk that may arise from branch and/or loan production office ("LPO") locations or assignment of loan officers to physical locations, types of loan products, and marketing;
>
> b.  The adoption of written policies and procedures regarding the Bank's marketing, as well as the training and monitoring of its loan officers in marketing mortgage loan products, soliciting, and originating mortgage loans;
>
> c.  Any changes to ABOK's formal process for ongoing statistical monitoring of mortgage underwriting, pricing, and redlining risk, including statistical

---

[2] "Loan officers" include Bank employees whose duties include, in whole or in part, the acceptance and/or solicitation of home mortgage applications.

peer analysis of applications and originations from majority-Black and Hispanic census tracts;

d. Any changes made to the reporting process of the Compliance Officer and/or Compliance Committee to senior management and the Board of Directors once mortgage underwriting, pricing, and redlining risk have been identified and the remediation process to address such risk; and

e. Any additional steps ABOK will take to promptly revise its mortgage lending policies and practices to ensure compliance with ECOA, Regulation B, and the FHA.

7.     If the United States objects to any portion of ABOK's Fair Lending Status Report and Compliance Plan, ABOK will make revisions and resubmit its proposal within thirty days of receiving the objection. ABOK will begin implementation of its Fair Lending Status Report and Compliance Plan within thirty days of receiving the United States' non-objection. Any material changes to ABOK's Fair Lending Status Report and Compliance Plan are subject to non-objection by the United States.

### C.     Fair Lending Training

8.     Within sixty days of the Effective Date, ABOK will provide a copy of the Complaint and Consent Order in this matter to all of employees with substantive involvement in mortgage lending, marketing, or fair lending or CRA compliance, or who have management responsibility over such employees; senior management with fair lending and marketing oversight; and members of the Board of Directors (collectively, "the

Relevant Bank Staff and Officials"). ABOK will implement a system for each individual to acknowledge that they received a copy of the Complaint and Consent Order and had the opportunity to ask questions. ABOK will provide a report that includes these acknowledgements to the United States, as well as a list of all persons and their titles to whom this Consent Order was delivered within seventy-five days of the Effective Date.

9.      ABOK will provide training to the Relevant Bank Staff and Officials on the Bank's obligations under ECOA, Regulation B, and the FHA and ABOK's obligations under this Consent Order. The training will be conducted by an independent, qualified third-party trainer selected by ABOK and subject to non-objection by the United States. Within sixty days of the Effective Date, ABOK will submit the qualifications of the third-party trainer to the United States for non-objection. Within sixty days of receiving non-objection from the United States regarding the independent, qualified third-party trainer, ABOK will submit the proposed training curriculum to the United States for non-objection. Within sixty days of receiving non-objection from the United States regarding the proposed training curriculum, ABOK will deliver the training described in this paragraph. ABOK will implement a system for each individual to acknowledge that they completed fair lending training and will provide a report that includes these acknowledgements to the United States within forty-five days after substantially all individuals have been trained.

10.      ABOK will provide the training described in Paragraph 9 annually to the Relevant Bank Staff and Officials. The training will be conducted live but may be held in person or virtually. ABOK will implement a system for each individual to acknowledge

that they completed fair lending training. During the term of this Consent Order, ABOK will provide a report to the United States that these acknowledgements were obtained in its Annual Reports prepared under Paragraph 49. Any proposed changes to the third-party trainer or the training curriculum are subject to non-objection by the United States.

11.     Any individual who becomes a Relevant Bank Staff or Official will, within thirty days of beginning the covered position, receive a copy of the Complaint and Consent Order. Any individual who becomes a Relevant Bank Staff or Official will, within sixty days of beginning the covered position, receive the training discussed in Paragraph 9. ABOK will implement a system for each such individual to acknowledge that they received a copy of the Complaint and Consent Order and that they completed fair lending training. During the term of this Consent Order, ABOK annually will provide a report to the United States that these acknowledgements were obtained within thirty days from the date that a Relevant Bank Staff or Official received the training.  Such reports will be included in ABOK's Annual Reports prepared under Paragraph 49.

12.     ABOK will bear all costs associated with the trainings.

**D.     Community Credit Needs Assessment**

13.     ABOK will submit to the United States for non-objection a Community Credit Needs Assessment for majority-Black and Hispanic census tracts within its Tulsa Lending Area. A Community Credit Needs Assessment is a research-based market study to help a lender identify the needs for financial services in an area. This assessment must include the

8

following information about majority-Black and Hispanic census tracts within the Tulsa Lending Area:

    a.  an evaluation (to include market research and interviews) of residential mortgage credit needs and current lending opportunities available in the area;

    b.  recent demographic and socioeconomic data;

    c.  potential strategies for ABOK to provide residential mortgage lending services in these census tracts;

    d.  an assessment of the need for marketing materials and loan origination materials to be in a language other than English;

    e.  an assessment of potential appropriate locations and hours of operation for new branch(es) and/or loan production offices in the census tracts:

    f.  a review of loan products offered by other lenders and their success in the market;

    g.  an overview of federal, state, and local programs that are available to Oklahoma residents seeking and obtaining residential mortgage loans; and

    h.  recommendations that address how each requirement of this Consent Order should be carried out to best achieve the remedial goals of this settlement.

14.    The Community Credit Needs Assessment will be conducted by an independent, qualified third-party consultant selected by ABOK and subject to non-objection by the United States. Within thirty days of the Effective Date, ABOK will submit the qualifications of the third-party consultant to the United States for non-objection. Within

9

thirty days of receiving non-objection from the United States regarding the third-party consultant, ABOK must submit to the United States, for non-objection, a statement of work from the independent third-party consultant describing their methodology for the assessment. Within ninety days of receiving non-objection from the United States regarding the statement of work, ABOK will submit to the United States the Community Credit Needs Assessment described in Paragraph 13.

15.    Once the United States has non-objected to the Community Credit Needs Assessment, ABOK will present the Assessment to the ABOK Board of Directors and officials responsible for overseeing fair lending compliance.

16.    Within sixty days of receiving non-objection from the United States of the Community Credit Needs Assessment, ABOK will submit a remedial plan that details, in light of the recommendations made in the Assessment, the actions the Bank proposes to take to comply with the requirements of this Consent Order (e.g., physical expansion, loan subsidy, community partnerships, advertising, outreach, consumer financial education, credit improvement programs, and annual reporting), including specific timeframes and implementations of these actions. The proposals within the remedial plan will be subject to non-objection by the United States.

### E.    Director of Community Lending

17.    Within ninety days of the Effective Date, ABOK will hire or designate a full-time Director of Community Lending. The responsibilities of this Director of Community Lending will include overseeing the development of the Bank's mortgage lending in

majority-Black and Hispanic census tracts and the Bank's compliance with the Consent Order. The Director of Community Lending will serve as a member of the Bank's Compliance Committee described in Section V. The Bank will maintain this position throughout the term of this Consent Order.

18.     The Director of Community Lending will be a senior executive who reports directly to American Bank of Oklahoma's Chief Executive Officer. The Director of Community Lending will devote at least half of their time to the responsibilities outlined in this section.

19.     The Director of Community Lending will provide reports on at least a quarterly basis to the Bank's Board of Directors and Chief Executive Officer regarding ABOK's actions related to the following:

    a.  implementing and administering all aspects of American Bank of Oklahoma's compliance with the Consent Order;

    b.  monitoring loan officers' solicitation and origination of mortgage loans in majority-Black and Hispanic census tracts, including use of the loan subsidy fund described herein;

    c.  coordinating the Bank's involvement in community lending initiatives and outreach programs within majority-Black and Hispanic census tracts;

    d.  encouraging and developing more mortgage lending within majority-Black and Hispanic census tracts;

    e.  promoting financial education to residents of majority-Black and Hispanic

census tracts;

    f.   providing financial counseling to residents of majority-Black and Hispanic census tracts; and

    g.   building relationships with community groups within majority-Black and Hispanic census tracts for the purpose of increasing access to credit.

**F.    Physical Expansion to Serve Majority-Black & Hispanic Census Tracts**

20.    ABOK will establish a community-oriented loan production office ("new physical location") in a majority-Black and Hispanic census tract in the Tulsa Lending Area. The specific site of the new physical location will be informed by the Community Credit Needs Assessment and subject to non-objection by the United States. The new physical location must at a minimum: maintain regular business hours and be staffed by at least one full-time employee who is trained to provide information and materials to customers and potential customers regarding all of the Bank's consumer lending and banking products and who will connect potential customers with a loan officer. The new physical location must also: offer the Bank's full range of loan products, including loans qualifying for the loan subsidy fund described in Section III.G; include a community meeting room large enough to accommodate financial education classes that ABOK will make available to the public and to community organizations; display external signage; be publicly accessible; and provide an automatic teller machine ("ATM"). ABOK will maintain the new physical location for at least the term of the Order.

21.     The community meeting room will be on the same premises as ABOK's new physical location, will be advertised to the public and community organizations, and will be made readily available for pre-scheduled uses by the public and community organizations.

22.     The ATM on the same premises as ABOK's new physical location will be a no fee ATM for ABOK customers and will maintain lower fees for non-customers than what is available at nearby ATMs for non-customers.

23.     ABOK will not seek to open or acquire any other branches before or until it first opens a full-service branch in a majority-Black and Hispanic tract in the Tulsa Lending Area absent prior written non-objection from the United States.

24.     ABOK must make reasonable efforts to open the new physical location within twelve months of the Effective Date. If ABOK fails to open the new physical location within twelve months of the Effective Date, the Bank will provide to the United States a written proposal describing how it will comply with Paragraph 20.

25.     ABOK will evaluate future opportunities for expansion within its Tulsa Lending Area, whether by merger or acquisition or opening new branches or loan production offices ("LPOs"), in consideration of the goals of this Consent Order and the Community Credit Needs Assessment. ABOK must notify the United States of any plans to open or acquire any new branches or other LPOs within its Tulsa Lending Area as soon as it may obtain regulatory authority to do so.

26.     As soon as practicable, but at least within twelve months of the Effective Date, ABOK will assign no fewer than two full-time loan officers to solicit mortgage applications primarily in majority-Black and Hispanic census tracts in the Tulsa Lending Area. ABOK will ensure that these loan officers have the opportunity to earn compensation similar to other ABOK loan officers for the work that they will perform in the majority-Black and Hispanic census tracts. These two full-time mortgage loan officers will be assigned to work out of the new physical location described in ¶ 20. ABOK will make best efforts to ensure that the individuals assigned to the loan officer positions described in this paragraph have ties to majority-Black and Hispanic neighborhoods in the Tulsa Lending Area.

### G.     Loan Subsidy Fund

27.     ABOK will invest a minimum of $950,000 in a fund with the goal of increasing credit for home mortgage loans, home improvement loans, and home refinance loans extended in majority-Black and Hispanic neighborhoods in the Tulsa Lending Area ("Loan Subsidy Fund").[3] No more than twenty-five percent of the Loan Subsidy Fund may be used for home refinances. The Loan Subsidy Fund will be used solely to provide subsidies to consumers described in Paragraph 28 and will not be used to cover administrative costs of implementing the Loan Subsidy Fund.

---

[3] All monetary terms outlined in this Consent Order, including those related to the Loan Subsidy Fund, Community Development Partnership Program, Advertising and Community Outreach, and Consumer Financial Education provisions, as described in this Section, are intended to remedy any harm resulting from the Bank's practices, which practices, as outlined in Section I of this Order, the United States alleges constitute redlining.

28.      ABOK will subsidize home mortgage, home improvement, and/or home refinance loans made to "qualified applicants" with funds from the Loan Subsidy Fund. A "qualified applicant" is any applicant who (i) applies for a mortgage for a residential property located in a majority-Black and Hispanic census tract in the Tulsa Lending Area that will serve as the applicant's primary residence, or (ii) is qualified to participate in a Special Purpose Credit Program consistent with the goal of the Loan Subsidy Fund and subject to the non-objection of the United States. A qualified applicant must in all cases be qualified for a residential mortgage loan under the underwriting standards that ABOK applies to the loans it originates.

29.      Loan subsidies may be provided by any of the following means, or a combination thereof:

a.  originating a loan for a home purchase or refinancing at an interest rate below the otherwise prevailing market interest rate offered by ABOK;

b.  down payment assistance in the form of a direct grant;

c.  closing cost assistance in the form of a direct grant;

d.  payment of the initial mortgage insurance premium on loans subject to such mortgage insurance; and

e.  any other appropriate assistance measures consistent with the goals of this Section and approved by the United States in writing.

30.      ABOK will retain the discretion to offer more than one, or all, of the forms of assistance in Paragraph 29 to qualified applicants on an individual basis as it deems

appropriate, subject to regulatory requirements and consistent with underwriting guidelines. ABOK will not offer the form of assistance set forth in Paragraph 29(a) in a manner inconsistent with the objective of offering qualified applicants the choice to select as many such forms of assistance as possible. For loans that ABOK maintains in its portfolio, ABOK will offer qualified applicants the choice of at least one form of assistance that does not include a discounted interest rate. The combined forms of subsidies set forth in Paragraph 29, and made through the Loan Subsidy Fund, cannot exceed $10,000 per qualified applicant unless ABOK receives non-objection from the United States to increase that amount.

31.   On an annual basis, upon its election, the Bank may evaluate the pace of loan subsidy spend down. Insofar as the Bank believes that there may be additional measures that could be taken to increase the number of subsidies granted, including but not limited to changes to the definition of qualified applicant and/or the nature of subsidies provided, the Bank may propose such measures to the United States and seek non-objection.

32.   No provision of this Consent Order, including the provisions related to the Loan Subsidy Fund, requires ABOK to make an unsafe or unsound loan or a loan to a person who is unqualified for the loan based upon lawful, nondiscriminatory parameters; however, ABOK may choose to apply more flexible underwriting standards in connection with its programs under this Consent Order. The underwriting standards applied by ABOK to residents of majority-Black and Hispanic neighborhoods must be no less favorable than the underwriting standards applied to residents in other census tracts.

### H.    Community Development Partnership Program

33.    ABOK will partner with one or more community-based or governmental organizations that provide the residents of majority-Black and Hispanic census tracts in the Tulsa Lending Area with services related to credit, financial education, homeownership, and foreclosure prevention. ABOK will develop these partnerships in a manner consistent with achieving the goals of this Consent Order. Through these partnerships, the Bank must spend a minimum of $20,000 per year ($100,000 over the term of this Consent Order) on professional services to residents of majority-Black and Hispanic census tracts in the Tulsa Lending Area that increase access to residential mortgage credit.

34.    As part of the remedial plan described in Paragraph 16, ABOK will submit a proposal to the United States describing how it will implement the requirements of Paragraph 33. The proposal will include an explanation of its proposed partner(s). The proposal should also describe, to the extent available, ABOK's plans to implement the partnership(s), as well as a description of how the partnership(s) will be used to meet the credit needs identified in the Community Credit Needs Assessment. The proposal will be subject to non-objection by the United States.

35.    ABOK will evaluate the partnership(s) outlined in Paragraph 33 annually, including by considering the Community Credit Needs Assessment, to identify any needed changes to the program to better assist residents of majority-Black and Hispanic census tracts in the Tulsa Lending Area in obtaining credit. ABOK will present a summary of its evaluation and any proposed changes to the United States as part of its annual reporting

17

requirement under Paragraph 49. Any proposed changes will be subject to non-objection by the United States.

     **I.**     **Advertising and Community Outreach**

36.     ABOK will spend at least $20,000 per year ($100,000 over the term of the Consent Order) on advertising and outreach directed to residents and prospective residents of majority-Black and Hispanic census tracts in the Tulsa Lending Area described in this Section.

37.     As part of the remedial plan described in Paragraph 16, ABOK will submit an Advertising, Outreach, and Education Plan ("Outreach Plan") to the United States detailing how it will spend these funds to increase access to credit extended in majority-Black and Hispanic census tracts in the Tulsa Lending Area during the term of this Consent Order. The Outreach Plan will include an explanation of why ABOK selected certain approaches and, to the extent available in advance of implementation, how ABOK's advertising, community outreach, education, and credit counseling initiatives are intended to meet the credit needs identified in the Community Credit Needs Assessment. The Outreach Plan will be subject to non-objection by the United States. If the United States objects to any portion of the Outreach Plan, ABOK will make revisions and resubmit its proposal within thirty days of receiving the United States' objection. ABOK will begin implementation of its Outreach Plan within thirty days of receiving non-objection from the United States.

38.     ABOK will evaluate the strategies outlined in its Outreach Plan annually, including by considering the Community Credit Needs Assessment, to identify any

changes necessary to increase access to credit extended in majority-Black and Hispanic census tracts in its Tulsa Lending Area in obtaining credit. ABOK will present a summary of its evaluation and any proposed changes to the United States as part of its annual reporting requirement under Paragraph 49. Any proposed changes will be subject to non-objection by the United States.

### i.   *Advertising*

39.   ABOK will advertise its residential loan products, including products for which the Loan Subsidy Fund outlined in Section III.G will be applied, to generate mortgage loan applications from qualified applicants as defined in Paragraph 28, above. ABOK's advertising may include print media, billboards, radio, digital advertising, television, direct mail, and any other appropriate medium. These advertisements must include similar information to other advertisements by ABOK. ABOK must advertise its mortgage lending services and products to majority-Black and Hispanic census tracts in its Tulsa Lending Area at least to the same extent that it advertises its mortgage lending services and products to majority-white census tracts in its Tulsa Lending Area.

40.   ABOK will create point-of-distribution materials, such as posters, brochures, advertising products and services, targeted toward increasing access to credit extended in majority-Black and Hispanic census tracts. ABOK will place or display these promotional materials in its new physical location in a majority-Black and Hispanic census tract.

41.   All of ABOK's print advertising and promotional materials referencing residential mortgage loans will contain an equal housing opportunity logo, slogan, or

statement, to the extent required by law. All radio or television advertisements will include an audible statement that ABOK is an "Equal Opportunity Lender" or "Equal Housing Lender," to the extent required by law.

### ii.    Outreach

42.    ABOK will hold at least four outreach programs per year for real estate brokers and agents, developers, and public or private agencies engaged in residential real estate-related business in majority-Black and Hispanic census tracts to inform them of ABOK's products and services and to develop business relationships, and with the intent to increase mortgage applications from residents of majority-Black and Hispanic Census tracts.

43.    ABOK may underwrite or sponsor events, such as sporting events, school programs, and community festivals, in support of the majority-Black and Hispanic census tracts in its Tulsa Lending Area that are related to building relationships within those areas and designed to generate applications for home mortgage, home refinance and/or home improvement loans. ABOK will make good faith efforts to underwrite or sponsor such events in majority-Black and Hispanic census tracts in the Tulsa Lending Area at least to the same extent that it underwrites or sponsors events in majority-white census tracts in the Tulsa Lending Area.

### J.    Consumer Financial Education and Credit Improvement Programs

44.    ABOK will provide a minimum of six financial education events per year, with translation and interpretation services in Spanish, targeted towards residents in majority-

Black and Hispanic census tracts in the Tulsa Lending Area.[4] These seminars will cover credit counseling, financial literacy, and other related education, to help identify and develop qualified loan application from those areas. The events described in this paragraph will be held at the new physical location described in Paragraph 20 or at locations within majority-Black and Hispanic census tracts of the Tulsa Lending Area convenient for residents of those census tracts. At least two loan officers engaged in mortgage lending will attend each of these events.

45.     ABOK will develop or maintain existing programs intended to establish or remediate the consumer credit of residents of majority-Black and Hispanic census tracts with the goal of increasing the number of qualified applicants in those tracts. Such programs are subject to the non-objection of the United States.

46.     ABOK will propose in the remedial plan how it will implement the requirements of Paragraphs 44-45. This proposal will be subject to the non-objection of the United States.

## IV.     EVALUATING AND MONITORING COMPLIANCE

47.     ABOK will retain records related to compliance with its obligations under this Consent Order during the term of this Consent Order. The United States has the right to

---

[4] Salaries or other compensation for participating Bank personnel shall not be counted towards the amount spent on these programs.

review and copy these records upon request, with at least thirty days advance notice provided.

48.     Every year during the term of this Consent Order, within thirty days of its submission of data to the Federal Financial Institutions Examination Council ("FFIEC") in accordance with the Home Mortgage Disclosure Act of 1975, 12 U.S.C. §§ 2801–2811, ABOK will provide this data to the United States in the same format, including the record layout.

49.     Beginning twelve months after the Effective Date, ABOK will submit Annual Reports to the United States on its progress in complying with the terms of this Consent Order and associated plans and programs. The final report will be delivered to the United States at least ninety days prior to the expiration of this Consent Order. The reports will provide a complete account of ABOK's actions to comply with this Consent Order, ABOK's assessment of the extent to which each obligation was met, an explanation of why ABOK fell short of meeting its goals for any particular component, and recommendations for additional actions to achieve the goals set forth in this Consent Order and associated plans and programs. The reports will include information about the execution of the Loan Subsidy Fund. Specific details regarding the reporting on the Loan Subsidy Fund will be set forth in the remedial plan described in Paragraph 16. ABOK's Director of Community Lending will review and approve the reports prior to submission to the United States. If the United States raises any objections to a report, the Parties will have thirty days to confer and resolve their differences. The Parties may mutually agree to additional time to confer,

if necessary. If the Parties are unable to resolve their differences, either party may bring the dispute to the Court for resolution.

50.     Unless otherwise advised in writing by the United States, all material required by this Consent Order will be sent to the United States by overnight delivery service or first-class mail and contemporaneously by email to the Department of Justice attorney(s) assigned to this matter at:

> Chief, Housing and Civil Enforcement Section
> Civil Rights Division
> U.S. Department of Justice
> 150 M Street NE, 8th Floor
> Washington, DC 20002
> Attn: DJ# 188-59N-111

## V.     ROLE OF THE COMPLIANCE COMMITTEE

51.     ABOK must maintain a Compliance Committee ("the Committee") that is responsible for monitoring the Bank's fair lending risks. The Committee shall review the policies and procedures related to the management of fair lending risks, facilitate communication between management and the Board of Directors, and report regularly to the Board of Directors.

52.     The Committee will review all submissions (including plans, reports, programs, policies, and procedures) required by this Consent Order prior to submission to the United States.

53.     Until the termination of this Consent Order, the Committee will be responsible for monitoring and coordinating the Bank's adherence to the provisions of this Consent Order.

54.    The Committee will provide quarterly updates to the Board of Directors of the Bank on the steps the Bank has taken and plans to take to comply with this Consent Order. Those quarterly updates will be attached to each annual report to the United States required by Paragraph 49 of this Consent Order.

## VI.    ADMINISTRATION

55.    The requirements of this Consent Order will remain in effect for five years, except as provided in Paragraphs 56-57.

56.    If, within five years of the Effective Date, ABOK has not invested all money in the Loan Subsidy Fund described in Section III. G, this Consent Order will remain in full effect and shall terminate three months after the submission of ABOK's final report to the United States that demonstrates the fulfillment of that obligation.

57.    Any time limits for performance may be extended by mutual written agreement of the Parties. Other material modifications may be made only upon approval of the Court, by motion by any party. If there are changes in material factual circumstances, the Parties will work cooperatively to discuss and attempt to agree to proposed modifications to this Consent Order.

58.    If disputes arise about the interpretation of, or compliance with, this Consent Order, the Parties will endeavor in good faith to resolve any dispute before bringing it to the Court for resolution. If ABOK is in material non-compliance with any provision of this Consent Order or fails to perform an act required by this Consent Order, the United States

may move the Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

59.     Nothing in this Consent Order excuses ABOK's compliance with any currently or subsequently effective provision of law or order of a regulator.

60.     ABOK will notify the United States of any development that may materially affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against ABOK; or a change in ABOK's name or address. ABOK will provide this notice as soon as practicable after learning about the development.

61.     ABOK will maintain all documents and records necessary to demonstrate full compliance with this Consent Order, including all submissions made to the United States, until the requirements of Paragraphs 55–57 are fulfilled.

62.     The United States may take steps to monitor ABOK's compliance with this Consent Order including, but not limited to, conducting tests of ABOK's mortgage lending operations or at any location(s) in which ABOK employees or agents engage in residential real estate-related transactions.

63.     Within ten days of the Effective Date, ABOK will:

    a.  Designate at least one telephone number and e-mail, physical, and postal address as points of contact, which the United States may use to communicate with ABOK;

    b.  Identify all businesses for which ABOK is the majority owner, or that ABOK directly or indirectly controls, or that is owned or controlled by an officer of ABOK, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; and

    c.  Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

64.     ABOK will report any change in the information required to be submitted under Paragraph 63 as soon as practicable, but in any case, at least thirty days before the change.

65.     This Order is binding on ABOK, including all of its officers, agents, servants, and employees who have actual notice of this Consent Order. If ABOK seeks to transfer or assign all or part of its operations to a successor or assign that intends to carry on the same or similar business, ABOK will obtain the written agreement of the successor or assign to obligations under this Consent Order as a condition of sale, merger, or other transfer.

66.     The Parties agree that litigation is not reasonably foreseeable. If any party implemented a litigation hold to preserve information, the party is no longer required to maintain it. Nothing in this paragraph relieves either party of any other obligations imposed

by this Consent Order.

67.     The Parties to this Consent Order will bear their own costs and attorneys' fees.

68.     The Court will retain jurisdiction over this civil action to enforce the terms of

this Consent Order.

    **IT IS SO ORDERED** this 3rd day of October, 2023.

**Christine D. Little**
**United States Magistrate Judge**

The undersigned hereby apply for and consent to the entry of the Order:

**For the United States of America:**

Dated:  August 24, 2023

CLINTON J. JOHNSON
United States Attorney


/s/ *Marianne Hardcastle*
MARIANNE HARDCASTLE
marianne.hardcastle@usdoj.gov
OBA #15054
KRISTIN HARRINGTON
kristin.harrington@usdoj.gov
OBA #21185
Assistant U.S. Attorneys
Civil Division
U.S. Attorney's Office
110 W. 7th Street, Suite 300
Tulsa, OK 74119
(918) 382-2700

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Chief

LUCY G. CARLSON
Deputy Chief

/s/ *Jennifer Slagle Peck*
JENNIFER A. SLAGLE PECK
jennifer.slagle.peck@usdoj.gov
District of Columbia Bar #990596
SARA L. NILES
sara.niles@usdoj.gov
Massachusetts Bar #634257
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW – 4CON
Washington, DC 20530
(202) 514-4713

27

**For American Bank of Oklahoma:**

Dated: August 24, 2023

MITCHELL SANDLER LLC

*/s/ Andrea Mitchell*
ANDREA K. MITCHELL
Managing Partner
Mitchell Sandler LLC
1120 20th St., NW
Suite 725
Washington, DC 20036
(202) 886-5261
amitchell@mitchellsandler.com

*/s/ Christopher McCall*
CHRISTOPHER MCCALL
Counsel
Mitchell Sandler LLC
1120 20th St., NW
Suite 725
Washington, DC 20036
(202) 886-5292
cmccall@mitchellsandler.com


MCAFEE & TAFT A PROFESSIONAL CORPORATION

*/s/ J. Craig Buchan*
J. CRAIG BUCHAN
Shareholder
McAfee & Taft A Professional Corporation
2 West Second Street
Williams Tower II, Suite 1100
Tulsa, OK 74103
(918) 574-3049
craig.buchan@mcafeetaft.com